**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

VERNELL CONLEY                                                    PETITIONER
ADC #110709

V.                              NO. 5:15-CV-00093-DPM-JTR

WENDY KELLEY, Director,
Arkansas Department of Correction                        RESPONDENT

<u>**RECOMMENDED DISPOSITION**</u>

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall Jr.   You may file written objections to all or part of this Recommendation.   If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation.   The failure to timely file objections may result in waiver of the right to appeal questions of fact.

## I.  Introduction

Pending before the Court is a § 2254 Petition for Writ of Habeas Corpus filed by Petitioner Vernell Conley ("Conley").   *Doc. 2*.   Before addressing Conley's habeas claims, the Court will review the long and winding procedural history of this case in state court.

### A.    Conley's Convictions and Direct Appeal

On August 26, 2010, a jury in Washington County, Arkansas, found Conley guilty of delivery of crack cocaine, possession of marijuana, and possession of drug paraphernalia.[1]  *State v. Conley*, Washington County Cir. Ct., Case No. CR-2009-2046-1 ("Conley I"); *see* Trial Transcript, *Doc. 15 at 202-203*.  The jury sentenced Conley to five-years for possessing 32.5 grams of marijuana, thirty-years for possessing a digital scale, and sixty-years for selling three rocks of crack cocaine for $100.00.[2]

On August 30, 2010, Conley was sentenced, as a habitual offender, to sixty-years for the delivery of crack cocaine; thirty-years for the possession of drug paraphernalia; and five-years for the possession of marijuana.  The 5-year sentence for possession of marijuana was imposed to run *concurrently* with the 30-year

---

[1]  On September 15, 2009, an undercover police officer paid Conley $100 for a single hand-to-hand sale of three rocks of crack cocaine from Conley, resulting in Conley being charged with delivery of crack cocaine.  *See Conley v. State*, 2011 Ark. App. 597, 385 S.W.3d 875, 876-877 (2011).

On November 6, 2009, law enforcement officers executed a search warrant on Conley's residence.  During the search, officers found 32.5 grams of marijuana and a set of digital scales.  *Id*.  The results of that search led to Conley being charged with one count of possessing marijuana with the intent to deliver (which included the lesser charge of possessing marijuana) and one count of possessing drug paraphernalia.  *Id*.

[2]  Conley had been convicted of twelve prior felony charges, eight of which involved delivery of cocaine.  *See* Trial Transcript, *Doc. 15 at 204-208* (listing felony convictions).

In each of those eight drug convictions, the longest term of imprisonment imposed was ten years.  This suggests that Conley's prior convictions for the delivery of cocaine was also based on relatively small drug transactions, similar to the one involved in this case.

sentence for possession of drug paraphernalia, but both of those concurrent sentences were ordered to run *consecutive* to the sixty-year sentence for delivery of cocaine. Thus, Conley entered the Arkansas Department of Correction facing an aggregate sentence of ninety-years.[3] *See* Amended Judgment and Commitment Order, *Doc. 8-4.*

On direct appeal, Conley argued that: (1) the trial court erred in denying his motions for directed verdict based on insufficiency of the evidence; and (2) the prosecutor engaged in prosecutorial misconduct, during the sentencing phase of his trial, by calling him a "drug dealer," something the trial judge allowed, without ruling on Conley's objection or giving a curative instruction. *Doc. 8-6 at 6-17.*

On October 5, 2011, the Arkansas Court of Appeals affirmed Conley's convictions. In doing so, the Court held that: (1) Conley's directed-verdict motions were "too general" to preserve his sufficiency of the evidence arguments; and (2) because Conley did not obtain a ruling from the trial court on his objection to the prosecutor calling him a drug dealer, during the sentencing phase of his trial, he

---

[3] Conley's status as a habitual offender affected the length of the range of punishment the jury could impose on the delivery of crack cocaine (10 years to life) and drug paraphernalia charges (3 to 30 years). *See* Ark. Code Ann. § 5-4-501 (eff. July 31, 2009 to July 26, 2011). However, none of Conley's prior felony convictions qualified for the "70% rule," which would have required him to serve 70% of his 90-year sentence before he became eligible for parole. *See* Ark. Code Ann. § 16-93-611 (effective July 31, 2009 to July 26, 2011, repealed effective July 26, 2011).

His convictions in *Conley I* were used in one of his earlier criminal cases (Washington County Circuit Court Case No. 2006-138-1) to revoke his suspended imposition of sentence and impose a seven-year sentence that he must discharge after he completes his sentence in *Conley I.*

failed to preserve that error. *Conley v. State*, 2011 Ark. App. 597, 385 S.W.3d 875 (2011) ("*Conley I*"); *Doc. 8-9*.

Conley did not seek review from the Arkansas Supreme Court. Thus, the Arkansas Court of Appeals' mandate became final on October 25, 2011. *Doc. 8-10*.

### B.   Conley's Rule 37 Proceeding

On December 27, 2011, Conley filed a *pro se* Rule 37 Petition in Washington County Circuit Court. *Doc. 8-11*. He later hired an attorney, D. Jason Barrett, who filed an Amended Rule 37 Petition asserting that Conley's trial attorney provided ineffective assistance of counsel by: (1) failing to provide Conley with enough information to make an informed decision regarding whether he should seek to negotiate a guilty plea; (2) failing to inform Conley of the possibility of a plea offer; (3) failing to sever the possession of marijuana and the possession of drug paraphernalia charges from the delivery of cocaine charge; (4) failing to call the witness he described in his opening statement, who would offer testimony proving that the marijuana and drug paraphernalia found in Conley's residence did not belong to him; and (5) failing to make proper motions for directed verdict on the possession of marijuana and drug paraphernalia charges. *Doc. 8-12*.

After conducting an evidentiary hearing, the trial court concluded that all of Conley's arguments lacked merit, and denied Rule 37 relief. *Doc. 8-13*. Conley

appealed, *pro se*, to the Arkansas Supreme Court. *Doc. 8-14*. However, he later hired a different attorney, Lee Short, to represent him in his Rule 37 Appeal.

In his Appellant Brief, Mr. Short argued that Conley's trial counsel was constitutionally ineffective because he: (1) failed to move to sever the marijuana and drug paraphernalia charges from the delivery of cocaine charge; (2) failed to deliver on the promise he made the jury in his opening statement to call a witness who would vindicate Conley on both possession charges; and (3) failed to move for a directed verdict on the possession of marijuana and drug paraphernalia charges based on insufficiency of the evidence. *Doc. 8-14*. Mr. Short's Appellant's Brief abandoned Conley's claim that his trial attorney provided ineffective assistance of counsel with regard to his alleged failure to communicate and discuss plea offers with Conley.[4]

On April 17, 2014, the Arkansas Supreme Court *granted Rule 37 relief* on the ground that Conley's trial counsel had provided ineffective assistance by failing to move for a directed verdict on the possession of marijuana and drug paraphernalia charges. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234 (2014) ("*Conley II*"); *Doc. 8-17*. The Court held that, if a proper motion for directed verdict had been made, thereby preserving the error for appeal, it would have been granted. *Id.*, 2014 Ark. 172, at 9-12, 433 S.W.3d at 241-243. Accordingly, the Court *reversed* Conley's convictions for possession of marijuana and possession of drug paraphernalia, and

---

[4] The Brief does not explain why this claim was abandoned.

remanded the case to the trial court, with directions to dismiss those two charges. *Id.*, 2014 Ark. 172, at 13, 433 S.W.3d at 243.[5]

The Arkansas Supreme Court did *not* address Conley's severance argument, which it construed as "solely directed to the possession offenses . . . Because we have already found counsel's performance deficient with regard to those convictions [for possessing marijuana and drug paraphernalia], and because those charges are to be dismissed, we need not address this claim [that the trial court erred in not granting his motion to sever the delivery of cocaine charge from the possession charges that arose over one month later, during an unrelated search of his residence.]" *Id.*, 2014 Ark. 172, at 12-13, 433 S.W.3d at 243.[6]

For unknown reasons, after remand, the trial court waited *sixteen months* before entering an order dismissing the possession of marijuana and possession of drug paraphernalia charges. *Doc. 12-2 at 1.*[7]

---

[5]  As a result of this ruling, Conley's only surviving sentences were the 60-year sentence for delivery of cocaine and the 7-year sentence for violating the conditions of a suspended sentence imposed in an earlier case.

[6]  In other words, the Court reasoned that its ruling dismissing the marijuana and drug paraphernalia charges "mooted" Conley's severance argument that his trial counsel should have moved to sever the possession of marijuana and drug paraphernalia charges from the delivery of cocaine charge.

[7]  Because it was ordered to dismiss both possession charges, the trial court should have vacated the sentences on those charges and entered an Amended Judgment.  For unknown reasons, the trial court never entered an Amended Judgment.

### C.    Conley's § 2254 Habeas Action

On March 19, 2015, Conley initiated this § 2254 habeas action, challenging

the constitutionality of his conviction for delivery of cocaine. *Doc. 2*.  In his habeas

Petition, he asserts the following claims:

Claim 1   The evidence presented at trial was constitutionally insufficient to support his conviction for delivery of cocaine. *Id. at 17-20*.

Claim 2   His trial counsel provided constitutionally ineffective assistance by failing to make a proper motion for directed verdict based on the insufficiency of the evidence supporting the delivery of cocaine charge. *Id. at 3-8*.

Claim 3   By calling him a "drug dealer," during the sentencing phase of his trial, the prosecutor engaged in prosecutorial misconduct, which the trial court failed to address or correct with a curative jury instruction, all of which deprived Conley of a fair trial. *Id. at 8-10*.

Claim 4   His trial counsel provided constitutionally ineffective assistance by failing to adequately advise Conley about potential future plea negotiations and then failing to inform him of a possible plea offer so that he could make an informed decision on that issue. *Id. at 28-32*.

Claim 5   His trial counsel provided constitutionally ineffective assistance by failing to move to sever the delivery of cocaine charge from the possession of marijuana and drug paraphernalia charges. *Id. at 10-13*.

On May 12, 2015, Respondent filed a Response arguing that all of Conley's

habeas claims should be dismissed because they are: (1) time-barred and/or

procedurally defaulted; and (2) without merit, because they were reasonably

adjudicated in the state courts. *Doc. 8*. On June 10, 2015, Conley filed his Reply. *Doc. 10*.

On November 25, 2015, attorney J. Thomas Sullivan filed a Motion requesting to be appointed counsel for Conley. In this Motion, Mr. Sullivan asserted that at least one of Conley's ineffective assistance of counsel claims was "potentially meritorious" and justified the appointment of counsel. *Doc. 16*. On January 12, 2016, the Court granted the Motion and appointed Mr. Sullivan to represent Conley. *Doc. 18*.

On July 6, 2016, Mr. Sullivan filed a Motion to Hold Federal Habeas Petition in Abeyance so that Conley could return to state court to fully exhaust the still available remedies related to Claim 5. *Doc. 31*.[8] On February 1, 2017, I entered an Order staying all proceedings in this case until the conclusion of the state court proceeding that Mr. Sullivan intended to initiate. *Doc. 34*.

Respondent appealed my decision to stay to United States District Judge J. Leon Holmes. *Doc. 35*. On March 8, 2017, Judge Holmes entered an Order agreeing with my decision, and all proceedings in this case were stayed so that Conley could

---

[8] According to Conley: (1) his ineffective assistance of counsel claim raised in Claim 5 still had not been "actually litigated to finality" in *Conley II* because the Arkansas Supreme Court misconstrued the claim as being "solely directed to the possession [of marijuana and drug paraphernalia] offenses"; (2) the Arkansas Supreme Court failed to address how its decision to dismiss the possession convictions impacted his conviction and sentence for delivery of cocaine; and (3) the trial court failed to enter an Amended Judgment, after *Conley II*, to reflect that Conley's only remaining conviction and sentence was for the delivery of cocaine. *Doc. 31*.

return to state court to pursue the state court remedies that were still available to him in connection with Claim 5.  *Doc. 41*.

### D.    Conley Returns To The Arkansas Supreme Court And Files A Motion To Recall Mandate

On April 7, 2017, Conley filed a Motion requesting the Court to recall the Mandate in *Conley II* and allow him to file an out-of-time petition for rehearing.  In support of that relief, Conley cited the Arkansas Supreme Court's failure to address how the dismissal of the possession convictions and sentences (which together totaled 35 years) affected the constitutionality of the jury's simultaneous decision to convict and sentence him to 60 years on the delivery of cocaine charge; especially in light of his trial counsel's failure to move to sever the far more serious delivery of cocaine charge from the possession of marijuana and drug paraphernalia charges. *Doc. 42*.

On April 27, 2017, the Arkansas Supreme Court summarily denied Conley's Motion to Recall Mandate.  *See Conley v. State,* Ark. S. Ct. No. CR-13-21 (April 27, 2017); *Doc. 43*.[9]

---

[9] *See* Conley's post-stay state court filings online at https://caseinfo.arcourts.gov.

### E.   Conley's State Court Habeas Actions

On May 22, 2017, Conley filed a habeas petition in Jefferson County Circuit Court, the county of his incarceration. *Conley v. Kelley*, Jefferson County Cir. Ct. No. 35-CV-17-349. After his Petition was denied by the trial court and, while his appeal was pending before the Arkansas Supreme Court, Conley was transferred to an ADC facility in Lincoln County. On December 14, 2017, the Arkansas Supreme Court dismissed the appeal because the Jefferson County Circuit Court no longer had jurisdiction over the case. *Conley v. Kelley*, Ark. S. Ct. No. CV-17-700 (December 14, 2017).

On January 26, 2018, Conley filed a habeas petition in Lincoln County. *Conley v. Kelley*, Lincoln County Cir. Ct. No. 40CV-18-15. Among other things, Conley argued that, in sentencing him to 60 years for delivery of cocaine, the jury considered the highly prejudicial evidence of his possession of marijuana and drug paraphernalia. Because the Arkansas Supreme Court later held in *Conley II* that both of those charges should have been dismissed by the trial court, on directed verdicts, Conley argued his constitutional rights had been violated.[10] *Conley II*, 2014 Ark. at 11-12, 433 S.W.3d at 242-243.

---

[10] Specifically, Conley argued that it violated his right to due process under the Fourteenth Amendment for the Arkansas Supreme Court in *Conley II* not to also order that he be resentenced by a new jury that set his punishment *based solely on evidence of his conviction for delivery of cocaine*.

On May 8, 2018, the Lincoln County Circuit Court dismissed Conley's habeas petition, and he appealed.  *Id.*

On January 31, 2019, the Arkansas Supreme Court affirmed.  *Conley v. Kelley*, 2019 Ark. 23, 566 S.W.3d 116 (2019) ("*Conley III*").  According to the Court, because his sentences for the possession of marijuana and possession of drug paraphernalia convictions had been dismissed in *Conley II*, Conley's severance argument was moot.  The Court summarily disposed of his constitutional challenge to the sixty-year sentence he received for the sale of $100 worth of crack cocaine by reasoning that as long as his sentence was within "the appropriate statutory range" it could not be unconstitutional.[11]  *Id.*

Finally, the Court acknowledged that, in *Conley II*, it neither ordered the trial court to hold a new sentencing hearing on Conley's contemporaneous conviction for delivery of cocaine, nor directed the trial court to enter an amended judgment and commitment order.  However, because Conley did *not* file a timely petition for rehearing raising those alleged errors, it was too late for him to revive those issues in a state habeas action.  *Id.*

In a blistering dissent, Justice Josephine Hart saw things quite differently.  She left "for another day a broad discussion of the dubious authority for the Arkansas

---

[11]  Under Ark. Code Ann. § 5-4-501 (effective July 31, 2009 to July 26, 2011), the statutory range for delivery of cocaine, a class Y felony, for a defendant like Conley with more than four prior felonies, was 10 years to life.

Supreme Court's diminution of the writ of habeas corpus," but did note that it was "simply Orwellian [for the majority] to suggest that Mr. Conley's existing judgment and conviction is not 'facially invalid.'" *Conley III*, 2019 Ark. at 12, 566 S.W.3d at 123-124 (Hart, J., dissenting).

After reflecting on the "limited" relief the Court ordered in *Conley II*, Justice Hart concluded that:

> [T]he relief we granted in the Rule 37 case was unjust and wrong. While it may have been tempting to "split the baby," our disposition completely ignored the dynamics and realities of a trial. Simply dismissing the paraphernalia and marijuana counts was unjust to both the State and to Mr. Conley. The grant of a new trial was the proper remedy.

*Id*. at 13, 566 S.W.3d at 123.

Justice Hart also found the Court's decision in *Conley II* "unjust" because:

> [w]hile he did get his ninety-year sentence reduced to sixty years, it does not diminish the fact that he nonetheless received a 60-year sentence for selling $ 100 worth of narcotics that was based at least in part on the jury's consideration of evidence of crimes that this court later dismissed. The former is a violation of the Eighth Amendment and the latter a violation of due process.

*Id*. at 14, 566 S.W.3d at 124.  Finally, in Judge Hart's view, Conley "is also wrongly imprisoned on a sentence so disproportionate as to violate the Eighth Amendment." *Id*. at 15, 566 S.W.3d at 124.

### F.    Conley Appeals the Arkansas Supreme Court Decision in *Conley III* to the United States Supreme Court

On May 1, 2019, Conley filed a Petition for Writ of Certiorari in the Supreme Court of the United States challenging the Arkansas Supreme Court's decision in *Conley III*. *Conley v. Kelley*, 566 S.W.3d 116 (Ark. 2019), petition for cert. filed, No. 18-9189 (U.S. May 1, 2019). The Petition made a forceful and compelling argument that Conley's due process rights were violated when the Arkansas Supreme Court allowed his sixty-year sentence for a selling $100 worth of crack cocaine to stand, even though it specifically found that the jury should not have heard any evidence of his possession of marijuana and drug paraphernalia because both of those charges should not have survived a motion for directed verdict.

On June 5, 2019, Respondent filed a Waiver declining to file a Response to Conley's Petition unless the Court requested one.

On October 7, 2019, the United States Supreme Court denied Conley's Petition for Certiorari. *Conley v. Kelley*, No. 18-9189, 2019 WL 4921820 (U.S. October 7, 2019). Thus, all constitutional claims related to Conley's conviction and sixty-year sentence for delivering cocaine have been fully and finally adjudicated and are now *res judicata*.

## II.  Discussion

For the reasons explained below, the Court concludes that all five of the habeas claims Conley raises in this action should be dismissed, with prejudice,

because each of them is either procedurally defaulted[12] or fails on the merit, after having been reasonably adjudicated in state court.[13]

### A.    Conley's Sufficiency Of The Evidence Claims (Claims 1 and 2)

Conley argues that the evidence presented at his trial was insufficient to support his conviction for delivery of cocaine (*Doc. 2 at 18-23*), and that his trial attorney provided ineffective assistance of counsel by failing to make a motion for directed verdict preserving this error for appeal (*Doc. 2 at 32-35*).   Respondent argues that Conley procedurally defaulted the trial error claim when his attorney failed to raise it during Conley's trial, and then procedurally defaulted the ineffective assistance of counsel claim during the Rule 37 proceeding.[14]  *Doc. 8 at 6-7, 11-12.*

A petitioner must "fairly present" his claims in state court before seeking § 2254 habeas relief in federal court. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir.

---

[12]   The Court declines to reach Respondent's statute of limitations argument, which is complicated by the state trial court's sixteen-month delay in complying with the Arkansas Supreme Court's mandate to dismiss the two possession charges.

[13]   On March 4, 2019, Conley filed a Supplemental Brief to address the impact of all post-stay state court proceedings.  *Doc. 61.*  On April 16, 2019, Respondent filed a Response to the Supplemental Brief. *Doc. 64.*  On June 3, 2019, Conley filed a Reply in support of his Supplemental Brief.  *Doc. 66.*  Thus, all of the issues are now fully joined.

[14]   While Conley's initial Rule 37 Petition, filed *pro se*, arguably raised this claim, his Amended Rule 37 Petition, filed by counsel, abandoned the claim at the trial court level:

> [P]etitioner cannot argue in good faith that the delivery charge would have resulted in a different verdict . . . it seems clear that there was more than ample evidence presented to find petitioner guilty of the charge of Delivery of Cocaine.

*Doc. 8-12 at 6.*

2011); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . .

shall not be granted unless it appears that the applicant has exhausted the remedies

available in the courts of the State"); *Perry v. Kemna*, 356 F.3d 880, 886 (8th Cir.

2004) ("To avoid a procedural default, a habeas petitioner must present the same

facts and legal theories to the state court that he later presents to the federal courts.")

(internal quotation and citation omitted); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir.

1997) ("[B]oth the factual grounds and legal theories on which the claim is based

must have been presented to the highest state court in order to preserve the claim for

federal review.").   By exhausting all available state court remedies, a habeas

petitioner gives the State that convicted him an "opportunity to pass upon and correct

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364,

365 (1995) (per curiam) (internal quotations omitted).

When a petitioner fails to fully exhaust his claims in state court and the time

for doing so has expired, his claims are procedurally defaulted.   *Coleman v.*

*Thompson*, 501 U.S. 722, 731-32 (1991).  Thereafter, a federal habeas court cannot

consider the claim unless the prisoner can demonstrate "cause" for the default and

"actual prejudice" as a result of the alleged violation of federal law, or demonstrate

that failure to consider his claim will result in a "fundamental miscarriage of justice."[15] *Id.* at 750.

Ineffective assistance of counsel can be "cause" excusing a procedurally defaulted trial error claim. However, a claim of ineffective assistance must be presented to the state courts as an independent claim *before* it can be used to establish cause for a procedurally defaulted trial error claim. *Williams v. Kemna*, 311 F.3d 895, 897 (8th Cir. 2002) (citing *Murray v. Carrier*, 477 U.S. 478, 481-81 (1986)). Ineffective assistance of counsel during state postconviction proceedings can also, in limited circumstances, constitute cause to excuse the default of "substantial" ineffective assistance of trial error claims that were not raised in the postconviction proceeding. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).[16]

Conley argues "cause" exists to excuse his procedural default based on both his trial and his postconviction attorneys' ineffective assistance. *Doc. 10 at 23; Doc.*

---

[15] Conley also argues that his "actual innocence" excuses his procedural default of Claims 1 through 4. However, because he fails to present *any* new reliable evidence of his innocence, there is nothing to support a finding that his conviction constituted a "fundamental miscarriage of justice." The law is clear that, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see Nooner v. Hobbs*, 689 F.3d 921, 937 (8th Cir. 2012) (when habeas petitioner fails to present new, reliable evidence of innocence, "it is unnecessary to conduct a further *Schlup* analysis").

[16] Under *Martinez* and its progeny, cause may exist to excuse an otherwise defaulted ineffective assistance of trial counsel claim, if the claim is deemed substantial, such that post-conviction counsel (or petitioner, if he had no counsel) was ineffective in not raising it when seeking postconviction review. *Martinez*, 566 U.S. at 9; *see also Trevino v. Thaler*, 133 S.Ct. 1911 (2013) and *Sasser v. Hobbs*, 735 F.3d 833 (8th Cir. 2013).

*2 at 34-35*. *Martinez's* equitable exception does *not* apply to procedurally defaulted claims of trial error. *Dansby v. Hobbs*, 766 F.3d 809, 833-34 (8th Cir. 2014) (declining to extend *Martinez* to claims of trial error or ineffective assistance of direct appeal counsel). Thus, *Martinez* has no application to Claim 1. The Court assumes that *Martinez* applies to Claim 2, since the claim was not litigated at the trial court level of the Rule 37 proceeding.[17]

To save Claim 2 from procedural default, Conley must establish that the claim is substantial, that is, it has "some merit." *Martinez*, 566 U.S. at 14. This requires Conley to make a preliminary showing under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring proof that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced Conley's defense.[18] *See Camacho v. Kelley*, 888 F.3d 389, 394, n. 3 (8th Cir. 2018) (observing that a *Martinez* procedural default analysis and a merits analysis each require application of the *Strickland* ineffective assistance standard).

---

[17] The Court will consider the circumstances of the withdrawal of the claim from the trial court's consideration as bearing solely upon the claim's merit, or lack thereof, although it could be argued that the fact that the claim was initially presented and then consciously omitted from Conley's Rule 37 papers means that *Martinez* should not apply.

[18] "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). Similarly, Conley is required to make a "substantial" showing with respect to both the performance and prejudice prongs of the *Strickland* standard in order to avoid procedural default and obtain a merits review of Claim 2.

To establish *Strickland* prejudice, Conley must show that there is a "reasonable probability" that, but for his trial counsel's error in failing to properly move for a directed verdict on the delivery of crack cocaine charge, the result of the proceeding would have been different. *Strickland*, 466 U.S. 668 at 687-688, 694 (1984). A "reasonable probability" is one that undermines confidence in the outcome of the proceeding. *Id*. at 694.

Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The case against Conley for the delivery of cocaine was *not* a close one. Based on the trial evidence, summarized below, "there was more than ample evidence presented to find petitioner guilty of the charge of Delivery of Cocaine[.]" This was the *stated reason* why Conley's counsel in filing an Amended Rule 37 Petition indicated that he, in good faith, could *not* assert the argument that Conley's trial counsel was constitutionally ineffective for failing to move for a directed verdict on the delivery of cocaine charge due to the purported insufficiency of the evidence supporting that charge. *Doc. 8-12 at 6*.

While this admission alone is arguably sufficient to support Claim 2's lack of substance, the Court will continue its *Martinez* analysis and discuss the evidence that supported the delivery conviction.[19]

On September 14, 2009, Fayetteville Police Officer Jason French received intelligence that Vernell Conley was selling crack cocaine in Washington County. Trial Testimony of Officer French, *Doc. 15 at 112, 114* (conventionally filed and maintained in the Clerk's office file). Officer French assembled the local drug task force and arranged a "controlled buy," in which two undercover detectives, Adam Howard and Andy Lee, would attempt to purchase crack cocaine from Conley. *Id. at 114*.[20]

Shortly after 8:00 p.m., on September 15, 2009, Howard and Lee met Conley at a park. *Id. at 116, 131-132*. Upon arrival, Howard exited his vehicle and walked over to the driver's side of Conley's car and handed Conley $100 in exchange for three rocks of crack cocaine.[21] *Id. at 139*.

---

[19] The discussion is also relevant to the Court's merits resolution of Claim 5.

[20] The three officers each had participated in more than one hundred drug investigations before the controlled buy from Conley. *Doc. 15 at 113-114, 130, 147*.

[21] A forensic chemist testified that the substance provided for testing was ".5813 grams cocaine based with lidocaine and levamisole." *Doc. 15 at 168, 247*. She further explained that the weight of one gram initially reported by the field officers was due to them weighing it with the bag. *Id. at 169*.

19

Howard recognized Conley's voice from two earlier telephone conversations and his face from a photograph provided prior to the transaction. *Id. at 132, 239-240*. Howard wore an audio recording device during the transaction. *Id. at 133*. The audio recording was played in court. *Id. at 136*.[22]  Although Lee did not exit the front passenger seat of the vehicle during the transaction, he witnessed the transaction from only a few feet away. *Id. at 140*. Both Howard and Lee identified Conley at trial as the individual who sold Howard the crack cocaine. *Id. at 140, 149-151*.

After the transaction, the officers providing backup for the controlled buy followed Conley's red Ford Focus back to his residence. *Id. at 119*. Officer French also drove by the residence about an hour and a half after the transaction and saw the red Ford Focus in the driveway. *Id. at 121-122*.

Conley argues that the officers' testimony is insufficient to sustain his conviction because: (1) it was dark and misting rain at the time of the transaction; (2) neither Howard nor Lee could provide a specific make and model of Conley's vehicle following the transaction; (3) neither Howard nor Lee could recall what particular clothes Conley was wearing during the transaction; (4) the audio recording was mostly inaudible and contained "absolutely no references to drugs or any illicit

---

[22]  The transcript of the audio is attached to the trial transcript. *Doc. 15 at 236-240*.

or illegal activity"; and (5) the cocaine purchased by the undercover officer was not a "usable amount." *Doc. 2 at 19-21, 34*.

Based on this evidence, a rational juror could have found the essential elements necessary to convict Conley of delivery of cocaine, beyond a reasonable doubt.[23]  First, Conley's counsel adequately cross-examined the officers about the reduced visibility due to darkness and weather conditions.  Both officers testified that, despite the weather, they were able to get a clear look at Conley's face during the transaction.[24]  Second, while neither Howard nor Lee was able to report the

---

[23] Under Arkansas law, "delivery" is defined as the "actual, constructive, or attempted transfer from one (1) person to another of a controlled substance . . . in exchange for money or anything of value."  Ark. Code Ann. § 5-64-101(7) (Supp. 2009).

[24] The testimony of Howard and Lee leave little room for argument on the point:

Prosecutor:    You actually saw the person who sold you the drugs on the telephone with?
Howard:   That is correct.
Prosecutor:  Do you see the person who sold you the drugs in the courtroom today?
Howard:   I do.
. . .
Prosecutor:    Detective Howard, is there any doubt in your mind at all that the Defendant sitting behind me is not the man who you bought crack cocaine from that day?
Howard:   Absolutely not.

*Doc. 15 at 132-133, 140.*

Prosecutor:    About how close did you get to the Defendant during this buy?
Lee:       He, when he pulled up he parked right next to us. I rolled my window down.
. . .
Prosecutor:    Did you see the actual drug transaction take place?
Lee:       I did.
. . .
Prosecutor:    Did you get a good look at his face?

specific make and model of Conley's car, their descriptions of the vehicle were consistent with the red Ford Focus identified by Officer French and the backup officers on the scene.[25]  Third, it is neither surprising nor relevant that Howard and Lee could not recall the specific clothing Conley wore to the transaction given the testimony that Conley never exited his vehicle during the transaction.  Fourth, while the recording did not capture any overt references to illegal activity, the recording provided strong circumstantial evidence to support the jury's finding that the transaction occurred.[26]

---

       Lee:        It was right – yes sir; he was face to face with me.

*Id. at 148-149, 151.*

  [25]  Officer Howard described Conley's vehicle as a red passenger vehicle while Officer Lee described it as either a maroon or red passenger car. *Doc. 15 at 143-144, 150.*

  [26]  The following exchange was played for the jury during Officer Howard's direct examination:

| | |
|---|---|
| Conley: | What up man? From Bentonville? |
| Howard: | You down here? |
| Conley: | Huh? |
| Howard: | How much, one bill is all you got? |
| | (*Officer Howard testified one bill meant one hundred dollars, which was worth one gram of cocaine.*) |
| Conley: | You'all ain't in no trickery is it? |
| | (*Officer Howard testified that, at this point, he exited his car, raised his shirt, and turned around so Conley could see he was not wearing a body wire or carrying a gun.*) |
| | That's what I like to see right there. |
| Howard: | Man I'm straight up I ain't fucking around man I ain't trying to get caught up and I ain't trying to get you caught up. |
| Conley: | Hit me up, hit me up later on man I have the weight for you. |
| | (*Officer Howard testified that he was attempting to buy an eight ball of crack, or 3.5 grams, but at the time Conley only had a gram to sell.*) |

Finally, whether the three rocks of cocaine that Conley sold to Officer Howard constituted a "usable amount" is *not* relevant to the *delivery* of cocaine. *See Ficklin v. State*, 104 Ark. App. 133, 137, 289 S.W.3d 481, 483–84 (2008) (citing *Gregory v. State*, 37 Ark. App. 135, 137, 825 S.W.2d 269, 270 (1992). The "usable amount" doctrine only arises in possession cases and is imposed as a requirement to prevent prosecutions for the *possession* of trace amounts of a controlled substance the accused may not even know is on his person or within his control. *Harbison v. State*, 302 Ark. 315, 790 S.W.2d 146 (1990).[27]

Thus, Conley has failed to make any showing that, *if* his trial counsel had properly challenged the sufficiency of the evidence to support Conley's delivery of crack cocaine, that motion would have been granted and the charge would have been

---

Howard:   How much later? Cause I, I mean if it's going about an hour I'll just
          kick it down here.
Conley:   Yeah kick it down hear (inaudible) about an hour or two.
                              . . .
Howard:   How much on a ball?
Conley:   Two dollars.
          (*Officer Howard testified that two dollars meant two hundred for the
          next 2.5 grams of crack.*)

*Doc. 15 at 136-140, 239.*

[27]  Here, the crack cocaine that Conley possessed *and* delivered weighed .5813 grams. Even in cases in which a defendant is charged only with possession of a controlled substance, Arkansas courts have found as little as .01 grams of crack cocaine to constitute a "usable amount." *Terrell v. State*, 35 Ark. App. 185, 186, 818 S.W.2d 579, 580 (1991); *Wells v. State*, 2017 Ark. App. 174, 4, 518 S.W.3d 106, 109-10 (2017).

dismissed. Accordingly, Conley cannot rely on *Martinez* to save Claim 2 from procedural default.

The Court recommends dismissing, with prejudice, Claims 1 and 2, as procedurally defaulted.

### B.    Trial Court's Alleged Error In Allowing Prosecutorial Misconduct (Claim 3)

During the sentencing phase of his trial, the prosecutor referred to Conley as a "drug dealer," and the trial court did not instruct the jury to disregard that remark. According to Conley, this alleged error deprived him of a fair trial. *Doc. 2 at 23-25*. Respondent argues that Conley procedurally defaulted this claim because his attorney failed to obtain a ruling on his objection to the prosecutor's remark, which precluded review of the issue on direct appeal. *Doc. 8 at 7-8*.

As "cause" to excuse his procedural default, Conley blames his trial counsel for this error, which he claims constituted ineffective assistance of counsel. *Doc. 10 at 27*. Regardless of whether "cause" exists, Conley cannot show he was actually "prejudiced" by the prosecutor referring to him as a "drug dealer." *See Roper*, 631 F.3d at 498.

During the sentencing phase of trial, Conley's wife, Monica Conley, testified on direct examination that her husband cared for their four-year-old child throughout the day, cooked dinners, did housework, and generally handled the "stay-at-home day to day" operation of the home. *Doc. 15 at 214-215*.

24

On cross-examination, the prosecutor questioned her about Conley being a "drug dealer":

| | |
|---|---|
| Prosecutor: | Mrs. Conley, your husband is a drug dealer. |
| Mr. Warren: | Objection, your Honor. That's argumentative. |
| Prosecutor: | It's a fact. |
| Court: | Well, let's just move forward. |
| Prosecutor: | As a drug dealer he makes money? |
| Ms. Conley: | I'm unaware of the money . . . I pay all the bills . . . there was no extra money coming into the house. |

*Id. at 215.*

Importantly, the prosecutor only referred to Conley as a "drug dealer" *after*: (1) the jury had returned its verdict finding him guilty of dealing drugs (*Doc. 15 at 202-204*); (2) the prosecutor had introduced evidence of Conley's twelve prior felony convictions, *including eight for the delivery of cocaine* (*Id. at 204-208, 249-275*); (3) Conley's former parole officer testified that, in his opinion, Conley was a "career drug dealer" and that he had never seen an offender with so many prior felony convictions for delivery of crack cocaine (*Id. at 212*); and (4) the jury had been instructed by the trial court that statements by the prosecutor or defense counsel were "*not evidence*" and should be "disregarded" if they were not supported by the

evidence (*Id. at 177*).  Finally, Conley concedes, in his § 2254 habeas papers, that "his history as a convicted drug dealer was not contested." *Doc. 10 at 26*.

Under these circumstances, the prosecutor's characterization of Conley as a "drug dealer," during the sentencing phase of his trial, had a sound basis in fact, which was borne out by overwhelming evidence of his long-time drug dealing. Accordingly, the prosecutor referring to Conley as a "drug dealer" did not violate Conley's due process rights or result in any "unfair" prejudice during the sentencing phase of his trial.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (prosecutorial misconduct amounts to a constitutional violation only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process"); *James v. Bowersox*, 187 F.3d 866, 870 (8th Cir. 1999) (no due process violation based on prosecutor's statement that defendant was "a big time, drug dealing, murdering, robbing slime").  Thus, Conley has not shown a reasonable probability that, if his trial counsel had properly raised and preserved this claim, the outcome of Conley's trial would have been different.

Accordingly, because Conley procedurally defaulted Claim 3, it should be dismissed, with prejudice.

### C.   Trial Counsel's Alleged Ineffectiveness In Failing To Adequately Discuss With Conley a Plea Offer Made By The Prosecutor And Then Failing to Tell Conley About A Later Plea Offer (Claim 4)

Conley argues that his trial counsel failed to adequately advise him about a plea offer made by the state so that he could make an "informed decision" and then failed to inform Conley of a possible later plea offer. *Doc. 2 at 28-32*.

Respondent argues that this claim is procedurally defaulted because, even though Conley raised it in his Amended Rule 37 Petition, he did not renew it when he appealed the denial of Rule 37 relief to the Arkansas Supreme Court. *Doc. 8 at 11*.

According to Conley, his procedural default of this claim in his Rule 37 appeal to the Arkansas Supreme Court should be excused because it was the fault of the attorney who handled *his appeal*. In *Martinez v. Ryan*, 566 U.S. 1, 16 (2012), the Court held that, if a procedural default occurs due to mistakes made by counsel during the equivalent of a Rule 37 appeal, a claim of ineffective assistance of counsel does *not* constitute cause to excuse the procedural default. *Accord Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (*Martinez* provides "no support . . . for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause.").

Accordingly, because Conley procedurally defaulted Claim 4, it should be dismissed, with prejudice.

### D. Trial Counsel's Alleged Ineffectiveness In Failing To Move To Sever The Delivery Of Cocaine Charge From The Possession of Marijuana And Drug Paraphernalia Charges (Claim 5)

Conley argues that his trial counsel provided constitutionally ineffective assistance by not moving to sever the delivery charge from the possession charges. *Doc. 2 at 25-28.* According to Respondent, this claim must be dismissed because it was reasonably adjudicated by the trial court during the Rule 37 proceeding.[28] *Doc. 16-21.*

To prevail on this ineffective assistance of counsel claim, Conley must prove both that his attorney was constitutionally ineffective *and* the deficient performance by his attorney resulted in prejudice. *Strickland*, 466 U.S. 668 at 687-688, 694. Conley seemingly "presumes" that his trial attorney's failure to move to sever those charges constitutes constitutionally ineffective assistance of counsel; thereby satisfying the first prong of *Strickland*. Accordingly, he focuses his initial argument on explaining why he has satisfied *Strickland*'s prejudice prong.

Alternatively, Conley argues that his trial counsel's failure to move for severance amounted to a "structural error" for which prejudice should be presumed

---

[28] As previously explained, in *Conley II*, the Arkansas Supreme Court declined to address the merits of this claim because its dismissal of the two possession charges "mooted" Conley's argument that his trial counsel was constitutionally ineffective in failing to move to sever the delivery charge from the possession charges. *Conley II*, at *12-13, 433 S.W.3d at 243.

because his right to severance was "absolute" and "integral to the jury trial right." *Doc. 21 at 26, 37-39*; *Doc. 61 at 36, 40*.

In making both of these arguments, Conley ignores the Court's holding in *Flowers v. Norris*, 585 F.3d 413, 417 (8th Cir. 2009), and *Nalls v. Kelley*, No. 5:15-cv-193-DPM, 2017 WL 2198380, at *1 (E.D. Ark. May 18, 2017).  Together, those two cases make it clear that the trial counsel's decision to forego moving to sever criminal charges cannot be "presumed" to constitute ineffective assistance of counsel, nor is such a decision "presumptively" prejudicial.

### 1.    A Doubly Deferential Standard Applies In Analyzing Claim 5

While the *Strickland* standard is deferential, in and of itself, federal habeas review is "doubly deferential" when a state court has made a final adjudication of a habeas petitioner's ineffective-assistance claims.[29]  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (stating that the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from

---

[29]  Where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief, on the adjudicated claim, in only three limited situations: the state court adjudication (1) was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); (2) "involved an unreasonable application" of clearly established federal law, *id*.; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id*. § 2254(d)(2).

asking whether defense counsel's performance fell below *Strickland*'s standard"). Meeting this high bar is always a daunting task for a habeas litigant.

The trial court held that: (1) Conley had failed to show his trial counsel's performance "fell below an objective standard of reasonableness;" *and* (2) even if the performance of his trial counsel was deficient, Conley had failed to show he was "prejudiced."[30] *Doc. 8-13 at 2-3.*

Conley now argues that the trial court did *not* rule on the "performance prong" of *Strickland* because its order denying Rule 37 relief stated only that "he suffered [no] prejudice as a result of [his trial counsel's] *failure* to seek a severance." *Doc. 61 at 56* (emphasis added*).* Read in context, the court's use of the word "failure," does not support Conley's assertion that Rule 37 relief was denied only under the "prejudice" prong of *Strickland* - not the performance or cause prong. After all, the court's order *explicitly stated* that: (1) Conley "failed to show that counsel's performance was deficient and fell below an objective standard of reasonableness [the "cause" prong of *Strickland*];" and (2) Conley's "[trial counsel's] performance

---

[30] While the trial court's order did not specifically cite *Strickland*, it was *not* required to do so: "[A] state court need not cite or even be aware of [*Strickland*] under § 2254(d)." *Harrington*, 562 U.S. at 98. "Under § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holdings in a prior decision of this Court." *Id.* at 102. "[T]he only question that matters under § 2254(d)(1)" is "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

did not fall below an objective standard of reasonableness [another specific finding related to the "cause" prong of *Strickland*]." *Doc. 8-13 at 3*.[31]

### 2. Conley's Trial Counsel Made A Strategic Decision Not To Move To Sever The Delivery of Cocaine Charge From The Possession Charges

Conley argues that the trial court's decision is not entitled to deference under § 2254(d) because "there was no reasonable advantage [to Conley] in proceeding to trial on all counts[.]" *Doc. 30 at 39-40*. According to Conley, because the delivery charge was not tried separately from the possession charges, the jury was allowed to aggregate unrelated drug charges to support one another, leading the jury to impose a sixty-year sentence for Conley's sale of $100 worth of cocaine to an undercover police officer. Conley contends that, if the charges been severed for trial, there is a reasonable probability that both the verdict and sentence on the delivery charge would have been different. *Doc. 21 at 27-32*.

The facts supporting Conley's convictions on the less serious "possession charges" are as follows. On November 6, 2009, almost two months *after* Conley sold cocaine to Officer Howard, Officer French arrested Conley outside his home

---

[31] Conley also argues the trial court's decision is not entitled to deference under § 2254(d) because it applied a prejudice test contrary to the one set out in *Strickland*. *Doc. 61 at 57*. The final paragraph of the trial court order denying Rule 37 relief states that Conley "has failed to show there is a reasonable probability that absent any errors allegedly made by his trial counsel, a different *and more favorable result* would have occurred." *Doc. 8-13 at 3* (emphasis added). While the trial court misstated the *Strickland* prejudice standard by adding the phrase "and more favorable," this lack of precision in no way undermines its holding that Conley's counsel's performance was *not* "constitutionally deficient."

and then executed a search warrant.[32]  *Doc. 15 at 122-123*.  During the search of Conley's home, Springdale Police Officer Justin Ingram discovered 32.5 grams of marijuana and a digital scale in the laundry room.[33]  Testimony of Officer Ingram, *Id. at 163*.

Respondent *concedes* that, if Conley's trial counsel had moved for a severance, Conley would have been entitled to have the delivery of cocaine charge tried separately from the possession of marijuana and drug paraphernalia charges.[34]  *Doc. 25 at 18*.  However, that does *not* end the inquiry into whether Conley's counsel's decision not to move to sever those charges constituted ineffective assistance of counsel.  If the facts and circumstances suggest that defense counsel's decision not to seek a severance was based on *trial strategy*, a reviewing court will not second guess that tactical decision.  *See Flowers*, 585 F.3d at 417 (8th Cir. 2009); *Nalls*, 2017 WL 2198380, at *1.[35]

---

[32]  It is not clear from the record why almost two months passed from the controlled buy to Conley's arrest and the execution of the search warrant on his home.

[33]  In *Conley II*, the Court held that this evidence did *not* demonstrate Conley, either actually or constructively, possessed the contraband because: (a) he was not inside the residence at the time the search began; (b) he was not the sole occupant of the residence; and (c) the contraband was discovered out of plain view. *Conley II*, 2014 Ark. 172, at 9-12, 433 S.W.3d at 241-243.

[34]  Under Arkansas law, whenever two or more offenses have been joined for trial, solely on the ground that they are of the same or similar character, and they are *not* part of a single scheme or plan – as is the case here – *the defendant has the right to a severance of the offenses*.  Ark. R. Crim. P. 22.2.

[35]  In *Nalls*, the petitioner was charged with four counts of delivery of cocaine on January 25, 2011, January 27, 2011, February 1, 2011, and February 14, 2011.  *See Nalls v. Kelley*, 2016

At Conley's Rule 37 evidentiary hearing, his trial counsel testified that his decision not to seek to sever the possession charges from the delivery charge was based on trial strategy:

> Q. Mr. Warren, why didn't you move to sever [the possession charges] from the separate Delivery of Cocaine charge alleged in Count 1?
>
> A. I did not move to sever that because it was a trial strategy in that I did not want my client at the time to face multiple juries as a super habitual offender and there was always the possibility that either way the convictions could be run consecutively and not concurrently.

---

WL 8996949, at 7-8. The jury heard testimony on all counts but convicted Nalls on only the February 14, 2011 count. *Id.*

    In his habeas petition, Nalls argued he was entitled to severance of the other counts, from the count for which he was ultimately convicted, and that his counsel was constitutionally ineffective for failing to file a motion to sever those counts. During an evidentiary hearing to develop the facts related to Nalls' severance argument, his trial counsel testified that she never discussed filing a motion to sever with Nalls. Instead, she *unilaterally decided* not to file a motion as part of her trial strategy to prevent the State from stacking client's sentences should he be found guilty. *Id.*

    In his order dismissing Nalls's habeas Petition, Chief United States District Judge D. Price Marshall discussed the heavy deference that *Strickland* gives to the tactical decisions of trial counsel:

> Nalls makes a hard run at trial counsel's reasons for not seeking a severance . . . but *Strickland v. Washington*, 466 U.S. 668, 687 (1984) requires much deference to counsel's choice. Avoiding the greater uncertainty, especially in the potential total sentence, that would have come with two juries instead of one was a reasonable strategic decision in the circumstances. . . . And though hindsight shows this didn't result in total victory, the Court can't consider that circumstance against Nalls's lawyer. *Strickland*, 466 U.S. at 689.

*Nalls v. Kelley*, No. 5:15-CV-193-DPM, 2017 WL 2198380, at 1.

Q. So it's your understanding that the Judge, if we had one trial, two trials, three trials, could have run these consecutively if he wanted to?

A. Yes.

Q. What ended up happening to the Possession of a Controlled Substance Marijuana charge in relation to the other two charges?

A. It was run concurrently.[36]

Q. Now, did you talk about the severance issue with your client?

A. Yes.

Q. What was his opinion on the issue?

A. He didn't have an opinion either way.

Q. Left it up to you?

A. Yes.

*Doc. 8-18 at 37-38.*

This testimony makes it clear that Conley's attorney made a *tactical decision* not to file a motion to sever the charges because he believed it gave Conley the best chance to avoid serving what might otherwise be substantially longer consecutive sentences, if the charges were severed and tried separately. Likewise, Mr. Warren

---

[36] The court actually ordered Conley's sentence for possession of marijuana to run concurrent to the sentence for possession of drug paraphernalia and consecutive to the sentence for delivery of crack cocaine. *Doc. 8-4.*

34

believed that, tactically, he had a better chance of creating reasonable doubt before one jury, which heard and decided all three charges, rather than splitting the charges between two juries.

Certainly, proceeding to trial on all charges carried the risk that the jury might not follow the Court's instructions and improperly consider the evidence of the possession charges in determining guilt and sentencing on the delivery charge. Using the benefit of hindsight, Conley now argues that, because the Arkansas Supreme Court later concluded in *Conley II* that the possession convictions were not supported by sufficient evidence, this must mean the jury "improperly aggregated evidence." *Doc. 61 at 41-43*; *Doc. 61 at 50*. Strategic decisions made by defense counsel during a criminal trial carry both risks and rewards, but courts are *not* permitted to second guess those decisions using hindsight. *Evans v. Luebbers*, 371 F.3d 438, 445 (2004) (holding that "strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under *Strickland*").

Conley also argues that severance was the *only* reasonable strategy because the evidence offered in support of the possession charges induced the jury to believe the testimony of Officer Howard and Officer Lee identifying Conley "on a dark and rainy night for the short time necessary to complete a drug transaction." *Doc. 61 at 50*. However, as previously explained, the evidence identifying Conley as the

35

individual who delivered the cocaine to Detective Howard was compelling and certainly strong enough to secure a verdict of guilty on the delivery charge, without a jury ever hearing any evidence related to the possession charges. Given the circumstances that existed at the time Conley's trial attorney made the strategic decision not to move to sever the charges, he had a reasonable basis for believing that trying the possession charges alongside the delivery of cocaine charge would have little effect on the jury's consideration of the evidence supporting the delivery charge and would give Conley the best chance of avoiding consecutive sentences.

Finally, during the sentencing phase of Conley's trial on the delivery charge, the jury was destined to hear of Conley's prior felony convictions, including eight previous convictions for delivery of cocaine. Thus, it is difficult to see how the jury's conviction of Conley for possessing only 32.5 grams of marijuana and a digital scale could have much, if any, impact on their deliberations about the appropriate sentence to impose on the delivery of cocaine charge.

Given the strong evidence supporting Conley's guilt on the delivery charge and his lengthy drug-related criminal history, the Rule 37 trial court reasonably concluded that Conley's trial counsel's decision to limit Conley's exposure to one trial and one jury – in a county known to be particularly hard on accused drug dealers – was a reasonable tactical decision aimed at minimizing the sentences Conley

received if he was convicted.[37] Thus, the trial court's rejection of Claim 5 was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record.

Accordingly, the Court recommends dismissing Claim 5, with prejudice.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.     All claims asserted in Petitioner Conley's 28 U.S.C. § 2254 Petition, Doc. 1, be DENIED, and this case be DISMISSED, WITH PREJUDICE; and

2.     A Certificate of Appealability be denied pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases and 28 U.S.C. § 2253(c)(1)-(2).

DATED this 19th day of November, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[37] Conley makes a number of other arguments directed at his trial attorney's competence. For example, he states it was his "first jury trial;" during the Rule 37 evidentiary hearing he did not remember that Conley's sentence for the possession of marijuana ran consecutive to the sentence for delivery of cocaine (*see* footnote 36, *supra*); and he was constitutionally ineffective in connection with his motions for directed verdict.  None of those arguments are relevant or material to whether Conley's trial counsel was constitutionally required to move to sever the delivery charge from the possession charges. *Doc. 21 at 28-31*; *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (holding that cumulative error does not call for habeas relief, but rather each habeas claim must stand or fall on its own).